**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FRANK MARSH,** | **Civil Action No. 19-15320 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **ANTONIO CAMPOS, et al.,** | |
| **Defendants.** | |

This matter has been opened to the Court by Defendant Dr. Ihuoma Nwachukwu's ("Dr. Nwachukwu" or "Defendant") filing of a motion to dismiss for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 13. Also pending before the Court is Plaintiff's motion for reconsideration of the Court's Memorandum and Order denying his Motion for a Temporary Restraining Order ("TRO Motion"). ECF No. 37. For the reasons explained in this Memorandum Opinion, the Court will grant the motion to dismiss, deny Plaintiff's motion for reconsideration, and provide Plaintiff with leave to file an amended complaint within 45 days.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

a.  Factual Background

Plaintiff instituted this Complaint against Dr. Nwachukwu and other individuals and entities alleging deliberate indifference to his medical needs under the Eighth Amendment in connection with injuries he sustained when he fell from a bunk bed at New Jersey State Prison ("NJSP") on April 1, 2017.[1] ECF No. 1, Complaint. Plaintiff identifies Dr. Nwachukwu as the

_____

[1] The Complaint also alleges state law negligence claims arising from the improper assembly of the bunk beds, but those Defendants have not entered an appearance in this matter. The Court

"head of the medical department" and asserts that "[s]he had direct personal involvement and/or had actual knowledge and acquiescence in the wrongs enumerated in th[e] Complaint." *Id.* ¶ 8.

In the early morning hours of April 1, 2017, Plaintiff sustained an injury to his head when he fell from an upper bunk at NJSP. Complaint at ¶ 17. Plaintiff alleges that he was immediately evaluated by the medical staff at NJSP and transported to St. Francis Medical Center for further treatment. *Id.* St. Francis Medical Center Emergency Department's discharge instructions included information about Plaintiff's injury and his diagnosis of a laceration at the forehead, left periorbital area. Further notes indicate that Plaintiff's laceration was 8 cm long and that he did not vomit nor lose consciousness as a result of the fall. *Id.* ¶ 40; *see also* Exhibit G. St. Francis Medical Center attending doctors ordered Plaintiff to have a CT scan of his face (maxillofacial) and cervical spine without contrast. Exhibit G.

Plaintiff alleges that the emergency room physician at St. Francis Medical Center provided instructions for follow-up care and for the removal of stitches upon his return to NJSP, and that the medical staff at NJSP ignored these instructions. *Id.* ¶ 19. The discharge instructions, which are attached to the Complaint, show that Plaintiff received two prescriptions and suggested a follow-up with the prison physician within 1-3 days. Complaint, Exhibit F. Plaintiff saw the doctor two days later on April 3, 2019, and he received two prescribed medications, namely, Bacitracin antibiotic ointment, and Acetaminophen, on April 6, 2017. Complaint ¶ 38; Exhibits F and I. Plaintiff alleges, however, that the medications were changed and were not provided as instructed and contends that he filed grievances about these issues. *See id.* ¶ 19.

---

does not construe the Complaint to allege any claims for negligence, including medical negligence, against Dr. Nwachukwu.

Nearly three months after the fall, Plaintiff continued to experience pain and medical staff at NJSP referred Plaintiff for a neurology consultation with Dr. Francis Pizzi at St. Francis Medical Center. Complaint, ¶ 20. Dr. Nwachukwu, the movant in this action, wrote the order referring Plaintiff to see the neurologist, but Plaintiff alleges that the words "[b]ack pain, which was also documented after the fall, was somehow missed and not mentioned in the order." *Id.* Dr. Pizzi diagnosed Plaintiff with "radiculopathy, secondary to a cervical extension injury" which occurred on impact after the fall. *Id.* Dr. Pizzi also stated that Plaintiff would benefit from "a cervical epidural steroid injection." *Id.*

Plaintiff states that he filed many grievances about his "treatment and lack thereof" at NJSP, *Id.* ¶ 20, and on October 4, 2017, he was referred to a second neurologist at University Hospital in Newark, New Jersey,. *Id.* ¶ 21. On November 28, 2017,  he received a cortisone shot for his neck and follow up care at University Hospital in Newark, NJ. *Id.* ¶ 22. The pain returned, and Plaintiff received "a second round of injections on March 8, 2018, after being evaluated by a neurosurgeon at University Hospital." *Id.* ¶ 23. On that date, Plaintiff also complained of pain while riding back from the hospital in a Department of Corrections ("DOC") van. *Id.*

Plaintiff was evaluated at University Hospital again on June 20, 2018; on the return trip, the DOC van "jumped the curb," and Plaintiff hit his head on the ceiling of the van, which caused shooting pain through Plaintiff's neck and arms. *Id.* ¶ 24. Plaintiff reported his injuries to prison medical staff. *Id.*

On July 17, 2018, Plaintiff reported to intake for his trip to University Hospital for treatment. *Id.* ¶ 25. Plaintiff informed the guards that he would not get in the DOC van for the long trip because he feared for his safety due to his neck and back injuries. *Id.* The guard agreed and told Plaintiff to tell the Medical Department about his concerns. *Id.*

3

Plaintiff contends that he attempted to request alternate transportation from the medical director, but was shuffled around to various medical staff who could not make decisions about transportation issues. *See id.* ¶ 26. He also attempted to speak to an Ombudsman and filed grievances but was unable to resolve the transportation issue, and his visit to University Hospital was not rescheduled. *Id.* ¶¶ 27-30. Plaintiff contends that using the DOC van to transport him to University Hospital is dangerous due to his injuries and is causing him further pain. *Id.* ¶ 31. In his Complaint, however, Plaintiff does not implicate Dr. Nwachukwu in denying him alternate transportation or provide facts showing that the denial of alternate transportation amounts to deliberate indifference to his health and safety.[2]

### b. Procedural History

Plaintiff filed his Complaint on April 1, 2019, in the Superior Court of New Jersey, Mercer County, Docket No. MER-L-698-19 ("State Court Action"). *See* ECF No.1. On or about July 12, 2019, Dr. Nwachukwu filed a notice to remove the State Court Action to the U.S. District Court for the District of New Jersey. (Docket Entry 1, Notice of Removal filed Jul. 12, 2019.) On September 25, 2019, the Magistrate Judge granted Dr. Nwachukwu's motion for an extension of time to file an answer, move, or otherwise plead by November 6, 2019. ECF No. 6.  On November 6, 2019, Defendant filed the instant motion to dismiss. ECF No. 13.

Plaintiff subsequently filed an application to proceed *in forma pauperis*, which was granted by this Court, ECF Nos. 15, 25, and a cross-motion to stay the matter pending service of the other Defendants. ECF Nos. 21. The Magistrate Judge provided Plaintiff with additional time to serve the unserved defendants but denied the motion to stay. *See* ECF No. 26.

---

[2] As noted below, Plaintiff does implicate Dr. Nwachukwu in denying his request for alternate transportation in his TRO motion and his motion for reconsideration. *See* ECF Nos. 27, 37.

Plaintiff next filed a motion for a preliminary injunction and temporary restraining order ("TRO"), which was denied without prejudice by this Court on May 21, 2020. ECF Nos. 27, 36. On May 28, 2020, Plaintiff submitted a motion seeking reconsideration of the Court's Memorandum and Order denying the TRO motion. *See* ECF No. 37. In the TRO motion and motion for reconsideration, Plaintiff attempts to elaborate on Dr. Nwachukwu's involvement in denying him adequate transportation to and from medical appointments. *See* ECF Nos. 27, 37.

## II.    **LEGAL STANDARD**

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. <u>ANALYSIS</u>

#### a. **The Motion to Dismiss**

Defendant moves to dismiss the Complaint against her for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). "[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Prison officials may not act with deliberate indifference to a prisoner's serious medical needs by denying or delaying medical care. *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As such, a prisoner's constitutional right to adequate medical care is violated if his serious medical need is met with deliberate indifference from prison officials. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003). In order to sustain a constitutional claim, a prisoner must make: 1) an "objective" showing that the prisoner's medical needs were sufficiently serious; and 2) a "subjective" showing that the prison official acted with a sufficiently culpable state of mind. *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. *See Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Allegations of medical malpractice or negligence are insufficient to meet that standard, as are "mere disagreements" concerning the proper course of treatment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

The Court of Appeals has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical

treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d 326, 346–47 (3d Cir. 1987); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)). The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *See Rouse*, 182 F.3d at 197.

The lone factual allegations in the Complaint against Dr. Nwachukwu are that she wrote the order for Plaintiff to see a neurologist but failed to mention "back pain" even though it was documented after his fall. Complaint ¶ 20. There are no facts to suggest that Dr. Nwachukwu knew of and disregarded a serious risk of harm when she failed to mention "back pain" in the order referring Plaintiff to the neurologist. Nor are there factual allegations to suggest that Dr. Nwachukwu denied or delayed medical care or subjected Plaintiff to a course of treatment that was painful or ineffective. Thus, the facts about Defendant's involvement in Plaintiff's medical care after his fall on April 1, 2017, are insufficient to state a claim under the Eighth Amendment.

To the extent Plaintiff is seeking to hold Dr. Nwachukwu liable for conduct of her subordinates, it is well established that to be liable under § 1983, a supervisor must be personally involved in the alleged wrongs, and liability may not be premised solely on *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Although "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations," *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004), a complaint "must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Here the Complaint states generally that Dr. Nwachukwu "had direct personal involvement and/or had actual knowledge and acquiescence in the wrongs enumerated in this Complaint." Complaint ¶ 8. Such vague allegations, without any factual support, amount to legal conclusions that are not entitled to the presumption of truth on a motion to dismiss. *See Iqbal*, 556 U.S. at 678. In addition, although Plaintiff asserts that other medical staff denied, delayed, or otherwise provided inadequate treatment to him, he does not provide sufficient facts showing that Dr. Nwachukwu was sufficiently involved in any alleged wrongs committed by subordinates. As such, Plaintiff also fails to state any claims for relief against Dr. Nwachukwu as a supervisor.

For these reasons, the Court will grant the motion to dismiss for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).[3]

### b. Plaintiff's Motion for Reconsideration of the Order Denying his TRO

Plaintiff's has also filed a "Motion for Reconsideration" of the Court's denial of his TRO motion. *See* ECF No. 37. In the motion for reconsideration, Plaintiff attempts to set out additional facts about Dr. Nwachukwu's involvement in the alleged denial of adequate transportation to his University City medical appointments. The Court declines to consider these allegations as part of Plaintiff's Complaint, which has been dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Court

---

[3] Defendant also seeks dismissal of the complaint for failure to exhaust administrative remedies; however, failure to exhaust is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Inmates are not required to plead or demonstrate exhaustion in their complaints. *Id.* For this reason, Defendant shall not raise this defense in any subsequent motions to dismiss under Rule 12. At the appropriate time, Defendant is free to file a motion for summary judgment on exhaustion of administrative remedies.

will also deny the motion for reconsideration as Plaintiff does not meet the standard for reconsideration[4] and there is no live complaint against Dr. Nwachukwu at this time.

### c.  Leave to Amend

The Court will, however, permit Plaintiff to file an amended complaint within 45 days to clarify his Eighth Amendment claims against Defendant Nwachukwu, including his allegations that her denial of medical transportation amounts to deliberate indifference. If Plaintiff elects to submit an amended complaint, he should recognize that "in general, an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity." *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). As such, he should include all claims against all Defendants in the amended complaint as it will become the operative complaint in this matter.[5]

### IV.   CONCLUSION

For the reasons explained in this Memorandum Opinion, the motion to dismiss the Complaint as to Dr. Nwachukwu is granted. ECF No. 13. Plaintiff's motion for reconsideration of the Court's Memorandum and Order denying his TRO motion is denied. ECF No. 37. Plaintiff

---

[4]  A court deciding a motion for reconsideration may alter or amend a judgment "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677 (citing N. *River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). None of these exceptions apply here.

[5] Defendant's letter request for an extension of time to respond to Plaintiff's motion for reconsideration is denied as moot in light of the Court's denial of the motion for reconsideration. If Plaintiff files an Amended Complaint, Defendant Nwachukwu and all Defendants who have entered an appearance shall either answer or file a timely motion pursuant to Fed. R. Civ. P. 12.

may file an Amended Complaint within 45 days of the date of the Order accompanying this Memorandum Opinion. An appropriate Order follows.

June 22, 2020

Freda L. Wolfson
U.S. Chief District Judge

10